

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

February 13, 2018

The Honorable Lyle Larson
Chair, Committee on Natural Resources
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. KP-0178

Re: Authority of the West Travis County Public Utility Agency to impose impervious cover requirements (RQ-0171-KP)

Dear Representative Larson:

Local Government Code, chapter 572, authorizes certain public entities to jointly create a "public utility agency" to own and operate facilities providing water and wastewater services for each participating public entity. TEX. LOC. GOV'T CODE § 572.051(3) (defining "public utility agency"); *see generally id.* §§ 572.001–.064. Pursuant to this authority, the City of Bee Cave, Hays County, and West Travis County Municipal Utility District No. 5 created the West Travis County Public Utility Agency ("Agency") and entered into a contract with the Agency to provide water and wastewater services to customers in northern Hays and western Travis counties.[1] Your question stems from a policy adopted by the Agency's board of directors that you say requires certain new customers to agree to limit development to 20% impervious cover "as a condition to obtaining water service."[2] Impervious cover requirements generally prescribe the percentage of land on which a developer may make man-made improvements that impede the infiltration of water into the soil. *See, e.g., El Paso Apartment Ass'n v. City of El Paso*, 415 F. App'x 574, 576 (5th Cir. 2011) (per curiam). The Agency tells us it began contractually imposing impervious cover requirements on certain new customers seeking water services as "service level and capacity planning tools," in response to concerns that the demand for water services from these customers would exceed its existing capacity. Agency Brief at 2–3. You question whether requiring new developments to limit impervious cover, as a condition to receiving water service, exceeds the Agency's statutory authority. *See* Request Letter at 1–7.

We note at the outset that you state the impervious cover policy applies only to new customers seeking water service outside the service area boundaries of the Agency's certificate of

---

[1] *See* Brief from Stefanie Albright, on behalf of the West Travis Cty. Pub. Util. Agency (Aug. 23, 2017) ("Agency Brief") (on file with the Op. Comm.).

[2] Letter from Honorable Lyle Larson, Chair, House Comm. on Nat. Res., to Honorable Ken Paxton, Tex. Att'y Gen. at 3 (July 21, 2017), http://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

convenience and necessity.[3] *Id.* at 2. While the Agency owes certain duties to customers living within the certificate's boundaries, including a duty to provide adequate water, we understand your question to pertain to those customers seeking discretionary water services from the Agency outside of its certificate. Additionally, we note that the Agency's contract with its creating entities may create legal obligations pertaining to your question; however, this office does not construe contracts in an attorney general opinion. *See* Tex. Att'y Gen. Op. No. GA-0810 (2010) at 1. Thus, we cannot fully advise you as to the Agency's legal obligations, particularly with respect to customers seeking water services within the City of Bee Cave, Hays County, and West Travis County Municipal Utility District No. 5. We can, however, provide general guidance regarding whether the Agency's enabling statute, chapter 572, vests it with the authority to require customers to comply with impervious cover limits as a contractual condition to receiving water service.

We begin with an overview of a public utility agency's authority under chapter 572. Chapter 572 provides that different types of public entities may join to create a public utility agency to "plan, finance, construct, own, operate, or maintain" water and wastewater facilities. TEX. LOC. GOV'T CODE § 572.051(3). While created by other public entities, a public utility agency is itself "a separate agency[,] political subdivision of this state[,] and political entity and corporate body." *Id.* § 572.052(c). As a statutorily-authorized body, a public utility agency has no inherent authority and may exercise only those powers conferred by the Legislature and by implication those powers "reasonably necessary to carry out the express responsibilities given to it by the Legislature." *See Tex. Coast Utils. Coal. v. R.R. Comm'n of Tex.*, 423 S.W.3d 355, 359 (Tex. 2014).

While several public entities with varying authority join in its creation, a public utility agency does not inherit the authority of its creating entities. Rather, chapter 572 expressly limits the scope of a public utility agency's authority by providing that the entity "may not engage in any utility business other than the collection, transportation, treatment, or disposal of sewage or the conservation, storage, transportation, treatment, or distribution of water for a participating public entity that owns jointly with the agency a facility in this state." TEX. LOC. GOV'T CODE § 572.058(a). To implement this authority, chapter 572 provides, in part, that a public utility agency may "adopt rules to govern the operation of the agency and its employees, facilities, and service" and "perform any act necessary to the full exercise of the agency's powers." *Id.* § 572.058(b)(1), (4). Additionally, chapter 572 confers on a public utility agency, except for taxation authority, all other powers "that are related to [water and wastewater] facilities and that are provided by law to a municipality that owns a facility." *Id.* § 572.052(d). Governing municipal-owned utilities, Local Government Code, chapter 552 confers several powers upon a municipal-owned water utility system, including the authority to "regulate the system in a manner that protects the interests of the municipality." *Id.* § 552.001(b). Likewise, a public utility agency therefore also has the authority to regulate its water utility system in a manner that protects its interests. *See id.* §§ 552.001(b), 572.052(d).

With respect to your question regarding whether a public utility agency may contractually require impervious cover limits, two statutory provisions delineate the entity's contracting

---

[3]A certificate of convenience and necessity gives the holder the exclusive right and obligation to provide adequate retail water and/or sewer utility services within an identified geographic area. *See* TEX. WATER CODE § 13.242; 30 TEX. ADMIN. CODE § 291.114(a).

authority with respect to private entities seeking water services. First, chapter 572 expressly provides that the Agency may contract with private entities for water services "*under terms the agency's board of directors considers appropriate.*" *Id.* § 572.060(2) (emphases added). Second, Local Government Code chapter 552 confers similar authority on municipal-owned utilities to "contract with persons outside its boundaries to permit them to connect with [the municipality's water utility system] *on terms the municipality considers to be in its best interest.*" *Id.* § 552.001(c) (emphases added).[4] Thus, for private entities seeking water service, the Agency's board of directors has discretion in determining the contractual conditions upon which it will extend service. *See id.* §§ 552.001(c), 572.052(d), 572.060(2). Subsection 572.058(a), however, limits the scope of that discretion by providing that a public utility agency "may not engage in any utility business other than the collection, transportation, treatment, or disposal of sewage or the conservation, storage, transportation, treatment, or distribution of water for a participating public entity." *Id.* § 572.058(a).

Turning to whether impervious cover requirements fall within this authority, the Agency tells us it uses these requirements as "planning tools to determine levels of needed capacity" and that the "purpose of applying these limitations to new service requests is to ensure that the demands of new development are not allowed to exceed the capacity of the [Agency's system], or in any way effect the [Agency's] current commitments for service and existing customers." Agency Brief at 3. While the Agency does have authority to "regulate [its] system in a matter that protects [its] interests," a dispute appears to exist as to whether the impervious cover requirements in fact further the Agency's stated goals. *See* TEX. LOC. GOV'T CODE §§ 552.001(a), 572.052(d); *see also* Request Letter at 7 ("[T]here is nothing about imposing impervious cover requirements to accomplish the 'conservation, storage, transportation, treatment, or distribution of water.'"). To the extent that the impervious cover requirements do, in fact, further the Agency's "conservation, storage, transportation, treatment, or distribution of water," a court would likely conclude that the Agency is within its discretion to impose the contractual restrictions. *See* TEX. LOC. GOV'T CODE § 572.058(a). Factors establishing a nexus could include where the public utility agency obtains its water and whether the proposed developments are within an aquifer recharge zone. However, a resolution of these issues necessarily requires a fact and evidence-based query. *See, e.g., Quick v. City of Austin*, 7 S.W.3d 109, 119 (Tex. 1998) (reviewing parties' evidence, including scientific testimony and nationally-recognized methods, in determining whether impervious cover ordinance was rationally related to its goal of protecting water quality). As this office does not resolve questions of fact in the opinion process and no Texas court has yet addressed this issue, we cannot therefore definitively advise you as to whether chapter 572 permits the Agency to require certain private entities to comply with impervious cover limits as a contractual condition to receiving water services. *See* Tex. Att'y Gen. Op. No. GA-0751 (2009) at 1 ("This office does not resolve questions of fact in the opinion process.").

---

[4]This grant of authority is consistent with Texas case law and attorney general opinions that have similarly concluded that a municipal-owned utility has reasonable discretion in determining the circumstances in which it will extend utility lines to a requesting developer. *See Crownhill Homes, Inc. v. City of San Antonio*, 433 S.W.2d 448, 457–58 (Tex. Civ. App.—Corpus Christi 1968, writ ref'd n.r.e.); Tex. Att'y Gen. Op. No. JC-0368 (2001) at 3.

## S U M M A R Y

A public utility agency has statutory authority to contract with private entities seeking water services under terms its board of directors deems appropriate and that are within the agency's permissible scope of authority.

Determining whether the West Travis County Public Utility Agency has authority to impose impervious cover limits on private entities as a contractual condition to extending its water services raises questions of fact and contract interpretation beyond the scope of an attorney general opinion.

Very truly yours,

KEN PAXTON.
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

ASHLEY FRANKLIN
Assistant Attorney General, Opinion Committee